620 A.2d 668

**HEMPFIELD TOWNSHIP**

v.

**George HAPCHUK and Ellen I. Hapchuk, his wife, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 1992.

Decided Jan. 29, 1993.

Reargument Denied March 22, 1993.

George Hapchuk and Ellen I. Hapchuk, pro se.

Francis R. Murrman for appellee.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

George and Ellen I. Hapchuk appeal from the order of the Court of Common Pleas of Westmoreland County that granted Hempfield Township's complaint in equity requesting an injunction against Hapchuks. We reverse.

In 1987, Hapchuks purchased 107 acres of farm property in Hempfield Township, part zoned residential (R–1) and part zoned agricultural (A–1).[1] The property has been actively farmed by Hapchuks or their predecessors-in-title for the past fifty years. Prior to the filing of the Township's complaint, the Hapchuks had obtained a permit from the Department of Environmental Resources (DER), which authorized the agricultural utilization of sewage sludge on 31.77 acres of their property. The permit covers not only a part of the property zoned A–1, but also a portion of the property that is zoned R–1. The sole area of dispute is the R–1 portion of Hapchuks' property upon which they agriculturally utilize sludge pursuant to their DER permit.

After learning of Hapchuks' DER permit, the Township filed a complaint in equity, requesting an injunction against the utilization of the sewage sludge on the portion of the property zoned R–1. The zoning ordinance does not specifically permit the spreading of sewage sludge in areas zoned R–1.[2]

1. In 1970, when the Township enacted its zoning ordinance, the 107 acres were zoned agricultural. In 1980, amendment 80–10 to the Township's zoning ordinance changed the zoning classification of a portion of the property to R–1. Notes of testimony of April 22, 1991 hearing (N.T.) at 12.

2. At the hearing, Hapchuks' counsel attempted to cross-examine the Township's zoning officer concerning the use of chemical fertilizers on lawns of other Township property zoned R–1. Presumably, the Hapchuks intended this line of cross-examination to establish that the chemical fertilizers routinely spread on the lawns of R–1 zoned property is nothing more than sewage sludge, but this connection was never established. The Township objected on the basis of relevancy. The trial court sustained the objection. While Hapchuks' counsel properly preserved the ruling for appeal, the Hapchuks did not make this argument in their *pro se* appeal. Therefore, we will not address this issue.

Following a hearing, the trial court issued an order permanently enjoining Hapchuks from conducting the agricultural utilization of sludge operation upon that portion of their property which had been zoned R–1. The trial court held that: 1) prohibition of Hapchuks' operations on their R–1 property was not an impermissible exercise of zoning power; and 2) the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–6018.1003, did not preempt the zoning ordinance.

On appeal,[3] Hapchuks argue that the trial court erred in: 1) granting the injunction because SWMA preempts the Township's zoning ordinance; 2) failing to find that the Township did not provide for the processing of septic waste as required by 25 Pa.Code § 71.21(4)(iv); and 3) failing to find that the farm usage of the entire property, including that now zoned R–1, predates the zoning ordinance and, therefore, Hapchuks agricultural utilization of sludge, an ancillary farm use, was a grandfathered and permitted use.[4]

The Pennsylvania Supreme Court addressed the matter of preemption in *United Tavern Owners of Philadelphia v. Philadelphia School District*, 441 Pa. 274, 272 A.2d 868 (1971). In that case, the Court stated:

In determining whether, by the enactment of the specific statute, the Commonwealth completely barred a municipality enactment of an ordinance relating to the same field, we will refrain from striking down the local ordinance unless the Commonwealth has explicitly claimed the authority itself, or unless there is such actual, material conflict between the state and local powers that only by striking down the local power can the power of the wider constituency be protected.

---

3. Our scope of review from the grant of a permanent injunction is to determine whether the trial court abused its discretion or committed an error of law. *Township of East Bradford v. Champaine*, 26 Pa.Commonwealth Ct. 168, 362 A.2d 1117 (1976).

4. Hapchuks' *pro se* brief fails to comply with the Pennsylvania Rules of Appellate Procedure. However, this failure to comply does not substantially impede our review of the issues presented and therefore, we will consider the merits of the case.

*Id.* at 280, 272 A.2d at 871. An ordinance will not be stricken down unless it is clearly shown that the legislature intended to preempt the field or unless the ordinance conflicts with the statute. *Retail Master Bakers Association v. Allegheny County,* 400 Pa. 1, 161 A.2d 36 (1960). SWMA and predecessor statutes do not show a clear intent to preempt local zoning regulations. *Greene Township v. Kuhl,* 32 Pa.Commonwealth Ct. 592, 379 A.2d 1383 (1977). While certain limited areas are pre-empted by the Act,[5] we have carefully reviewed SWMA and hold that nothing in SWMA discloses a specific grant of authority regarding preemption of zoning regulations on such issue.

 Next, Hapchuks contend that the Township's failure to adhere to the provisions of 25 Pa.Code § 71.21(a)(iv) bars the Township from attempting to enjoin the use. Section 71.21(a)(iv) provides that a municipality will meet with the DER prior to preparation of an official plan for the resolution of sewage disposal. This includes submission by the municipality of a plan for identifying the need for a sewage management program to assure the future operation and maintenance of existing and proposed sewage facilities. While Hapchuks raised this issue before the trial court, they did not pursue this argument there. Thus, we find that it was waived, even though the Township[6] failed to introduce any evidence that the ordinance properly provides for the processing of septic waste as 25 Pa.Code § 71.21 requires.

 Finally, Hapchuks contend that amendment 80–10 to the Township's zoning ordinance cannot bar utilization of the

**5.** In *Greater Greensburg Sewage Authority v. Hempfield Township,* 5 Pa.Commonwealth Ct. 495, 291 A.2d 318 (1972), we held that sewage facility operations, including the disposal of sludge from such operations, are preempted from local regulation. We also held in *Municipality of Monroeville v. Chambers Development Corp.,* 88 Pa.Commonwealth Ct. 603, 491 A.2d 307 (1985), that the disposal of waste at landfills was preempted from local regulations.

**6.** The Township had the burden of showing that it was entitled to the permanent injunction. A court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law. *See Fox–Morris Associates, Inc. v. Conroy,* 460 Pa. 290, 333 A.2d 732 (1975) (Roberts, J., concurring).

portion of their property now zoned R–1 for sewage sludge because their property has been continuously used for agriculture purposes and sewage sludge is an ancillary agricultural use. We agree.

Hapchuks' final argument is actually two pronged. First, they argue that the historical agricultural use of their property entitles them to continue that use, notwithstanding subsequent adoption of a zoning ordinance or changes to those zoning ordinances. Second, Hapchuks argue that sewage sludge is a form of agricultural use which fits within the historical agricultural use which they are entitled to continue.

As to the first element of their final argument, Hapchuks are clearly right as a matter of law. The adoption of a zoning ordinance does not mandate discontinuance of the existing use of a property affected by the ordinance. A zoning ordinance operates prospectively, only. Similarly, where land use conforms to an existing zoning ordinance, an amendment to the ordinance which reclassifies the property does not mandate discontinuance of the existing conforming use. In either case, the use simply becomes a nonconforming one which may continue, but may not be changed or expanded.

Our Supreme Court has long recognized the rule that a property owner may continue an existing use, notwithstanding adoption or change to a zoning ordinance. This rule, sometimes referred to as a form of "grandfather" rule, was discussed in *Hanna v. Board of Adjustment,* 408 Pa. 306, 183 A.2d 539 (1962), wherein the Supreme Court held:

> The use of the property which the ordinance protects, or 'freezes', is the use which was in existence at the time of the passage of the ordinance or the change of a use district (*Upper Darby Township appeal,* 391 Pa. 347, 138 A.2d 99 [ (1958) ]; *Lance Appeal,* 399 Pa. 311, 159 A.2d 715 [ (1960) ] ) but it offers no protection to a use *different* from the use in existence when the ordinance was passed. The latter does not render the ordinance invalid. The nonconforming use which is within the orbit of protection of the law and the Constitution is the nonconforming use which exists

at the time of the passage of the zoning ordinance.... (emphasis in original).

*Hanna,* 408 Pa. at 313, 183 A.2d at 543–544.

Under the facts of this case, the Hapchuks' property was historically used for agricultural purposes. The Township admitted that the use of the Hapchuk property in 1970, when the Township enacted the zoning ordinance, was agricultural. The record shows that in 1970, when the zoning ordinance was enacted, the entire Hapchuk property was zoned for agricultural use. In 1980, when the zoning ordinance was amended to its present form, a portion of the Hapchuk property was rezoned to R–1. However, the Township also admitted that in 1980 and thereafter, the entire Hapchuk property, including the portion rezoned R–1 in 1980, continued to be used as agricultural land. Thus, under the holding in *Hanna,* the property owner may perpetuate what became a nonconforming use so long as they did not expand or change the nonconforming use.

It makes no difference that the Hapchuks purchased the property in 1987, after the 1980 zoning ordinance amendment. Where a portion of the property had already been zoned R–1, as long as the intervening purchaser does not expand or change the use, they are entitled to the same "grandfather" protection. *Luciany v. Zoning Board of Adjustment,* 399 Pa. 176, 159 A.2d 701 (1960).

The only question remaining is whether Hapchuks' specific use of the R–1 portion of their property for sewage sludge is agricultural, and so to fit within the historical and protected use, or whether it represents a change or expansion of the historical use. This question brings us squarely to the second prong of Hapchuks' final argument. Hapchuks argue that their utilization of the R–1 portion of their property for sewage sludge disposal is "agricultural" and thus, within the historical use of the property. With this, we can also only agree.

In Section 103 of SWMA, the General Assembly has defined "normal farming operations" to include the "agricultural utilization of septic tank cleanings and sewage sludges which are

generated off-site." 35 P.S. § 6018.103. This also includes the "collection, storage, transportation, use or disposal of manure, ... and sludges on land where such materials will improve the condition of the soil, the growth of crops, or in the restoration of the land for the same purposes." *Id.* The activities defined as normal farming operations are precisely the same activities which the Hapchuks contend are agricultural.[7]

Hapchuks' use is agricultural in nature and/or in the nature of farming. We recognize that the General Assembly's definition of normal farming operations, although persuasive, is not dispositive on the question. However, Pennsylvania courts have used the terms "agricultural" and "farm" interchangeably. *See Commonwealth v. Wetzel,* 435 Pa. 468, 257 A.2d 538 (1969). Thus, we conclude that Hapchuks' sewage sludge use is farming and agricultural in nature. The Township makes no argument that Hapchuks sewage sludge activities fail to conform to that which is a permitted use on the portion of the Hapchuks' property zoned agricultural. Indeed, the Township could not make a contrary argument. Because the use of sewage sludge is agricultural and the property has always been used for farming, the Hapchuks (or their predecessors) could have continued the agricultural use, regardless of how the property was originally zoned in 1970, or rezoned in 1980. We conclude this is so because even the Township agrees that sewage sludge activities are permissible within agriculturally-zoned property as an agricultural use. In view of this, we hold that Hapchuks sewage sludge activities do not represent

---

7. Section 87–13 of the zoning ordinance states:

Districts designated for Agricultural A–1 are to be used for farming, residential and accessory uses until a logical demand occurs for urban-type development in general conformance to the current Comprehensive Plan. This district may accommodate schools, churches, parks and residential uses under certain conditions. This district is established in areas where agriculture is the most prominent use, in areas where no utilities exist, accessibility is difficult, in areas of unique natural beauty or in areas which are presently undeveloped, to conserve the existing character of such areas and to provide for suburban residential and agricultural uses and to guide more substantive land development through proper location and site characteristics.

an expansion or a change of the historical agricultural use of the portion of their property now zoned R–1.

Accordingly, we reverse.

## ORDER

AND NOW, this 29th day of January, 1993, the order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is hereby reversed.