IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wanda Slack,                          :
                Appellant             :
                                      :
        v.                            :
                                      :
Frederick J. Slack, Jr.,              :    No. 231 C.D. 2020
and James D. Lonergan                 :    Argued: March 18, 2021


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


OPINION
BY JUDGE FIZZANO CANNON            FILED: April 16, 2021


        Wanda Slack (Appellant) appeals the February 7, 2020 order entered
by the Court of Common Pleas of Bucks County (trial court) denying post-trial relief
following the October 4, 2019 non-jury verdict entered by the trial court finding in
favor of Frederick J. Slack, Jr. (Fred Slack, Jr.) and James D. Lonergan (Lonergan)
(collectively, Appellees) that the private airstrip located on Fred Slack, Jr.'s property
was not in violation of local zoning ordinances and would be permitted to continue
operation.  Upon review, we affirm.

## I.  Background

        In the late 1950s, brothers Miles Slack and Frederick Slack, Sr.
constructed a private airstrip[1] on a property they jointly owned in Buckingham

---

[1] The airstrip runway consists simply of a flat strip of mowed land.  *See* Trial Court Verdict
entered October 4, 2019 (Verdict) at 6, Finding of Fact (F.F.) 35.

Township, Bucks County, Pennsylvania, and which they later subdivided in 1966 into adjoining properties owned by each and hereinafter referred to as the "Miles Slack Property" and the "Fred Slack Property." *See* Trial Court Verdict entered October 4, 2019 (Verdict) at 2 & 8, Findings of Fact (F.F.) 4-6 & 46. The Miles Slack Property contains approximately 43 acres located at 2224 Forest Grove Road, Buckingham Township. *See* Verdict at 1, F.F. 1. Miles Slack co-owned the Miles Slack Property with Appellant, his wife, until his death in 2011, at which time Appellant acquired full ownership rights in the Miles Slack Property. *See* Verdict at 3, F.F. 11. The Fred Slack Property contains approximately 37 acres located at 1948 Forest Grove Road, Buckingham Township. *See* Verdict at 1-2, F.F. 2. Frederick Slack, Sr. co-owned the Fred Slack Property with his wife, Evelyn A. Slack, until her death in 2012, at which time he became the sole owner of the Fred Slack Property until his death in 2013. *See* Verdict at 2-3, F.F. 5 & 11. Upon the death of Frederick Slack, Sr., Fred Slack, Jr. obtained 10-year estates in both the Fred Slack Property and the adjoining Heritage Property, which estates do not lapse until the end of October 2023. *See* Verdict at 4, F.F. 19. The Slack brothers' private airstrip straddled and operated on both the Miles Slack Property and the Fred Slack Property following the subdivision of the property and became known as the "Slack Airport." *See* Verdict at 2-3, F.F. 6 & 9.

The Miles Slack Property and the Fred Slack Property are located within Buckingham Township's AG-1 Agricultural-1 Zoning District.[2] *See* Verdict at 2, F.F. 4. When the Slack brothers established the Slack Airport together in 1959,

_____

[2] Prior to a 1994 amendment, Buckingham Township's zoning ordinance (Zoning Ordinance) provided for only one agricultural district, the AG district. Beginning with the 1994 amendment, the Zoning Ordinance categorized Buckingham Township's agricultural districts as either AG-1 or AG-2, the distinction between which is immaterial for the purposes of this opinion.

2

an air landing strip was not a permitted use under the then-effective Buckingham Township Zoning Ordinance (Zoning Ordinance)[3] on their combined property or on either the Miles Slack Property or the Fred Slack Property individually.  *See* Verdict at 2, F.F. 7.  In fact, in 1959, the Zoning Ordinance made no mention whatsoever of airports or airstrips.  *See* Verdict at 8, F.F. 44.  In 1985, however, an amendment to the Zoning Ordinance made an airport landing strip a permitted accessory use in Buckingham Township's agricultural zoning district.  *See* Verdict at 3 & 7, F.F. 8 & 37-40.

The Slack Airport has been in continual existence since its establishment in 1959.  *See* Verdict at 8, F.F. 42 & 44; *see also* Trial Court Opinion dated June 13, 2020 (Trial Court Opinion) at 1.  Further, the Commonwealth of Pennsylvania, through the Pennsylvania Department of Transportation (PennDOT), Bureau of Aviation, has continually licensed the Slack Airport since that time, and its existence has at all times been open, notorious, and otherwise well known to Buckingham Township.  *See* Verdict at 8, F.F. 41 & 45.  From 1959 to 1996, Frederick Slack, Sr. and his brother, Miles Slack, enjoyed continual use of the airstrip.  *See* Verdict at 8, F.F. 41-42 & 44-45. Additionally, from 1996 to the present, Lonergan has leased a portion of the Fred Slack Property for the purpose of housing and operating his airplanes.[4]  *See* Verdict at 2 & 5, F.F. 3 & 29.

---

[3] We refer herein to Buckingham Township's zoning ordinance generally as the Zoning Ordinance.  Later in the opinion, we will refer to particular versions and/or amendments of the Zoning Ordinance more specifically by year enacted, where necessary and appropriate.

[4] Lonergan is not the only individual aside from the Slack brothers to operate aircraft out of the Slack Airport over the years.  *See* Notes of Testimony, June 5, 2019 (N.T.) at 78-79 & 95, Reproduced Record (R.R.) at 150a-51a & 167a; *see also* Deposition Testimony of Fritz Doerstling, R.R. at 578a-642a.  However, only Lonergan currently operates planes out of the Slack Airport.

In 1999, Frederick Slack, Sr. and Evelyn A. Slack purchased from the Heritage Conservancy a 28-acre parcel of land located adjacent to the Fred Slack Property on the opposite side of the Fred Slack Property from the Miles Slack Property (the Heritage Property). *See* Verdict at 3, F.F. 10. In addition to operating on the Miles Slack Property and the Fred Slack Property, the Slack Airport operated airplane taxiways across the Heritage Property. *See* Verdict at 3, F.F. 9.

In August 2000, Lonergan applied for and received approval from Buckingham Township to construct a hangar on the Fred Slack Property portion of the airstrip. *See* Verdict at 6, F.F. 31. Appellant had full knowledge of and consented to the construction of this hangar structure, and subsequently permitted use of the hangar and collected rents thereon. *See* Verdict at 8, F.F. 47.

Following Miles Slack's death in 2011, Appellant acquired the entire ownership interest in the Miles Slack Property. *See* Verdict at 3, F.F. 11. Thereafter in 2011, Appellant first lodged an objection to the continued use of the Slack Airport airstrip on the Miles Slack Property, indicating that she intended to fence her property off to protect it from deer. *See* Verdict at 8, F.F. 48. Appellant made no mention of or objection to aircraft noise at the time. *See id.*

On February 3, 2013, Appellant informed PennDOT by letter that she no longer wished to have the Slack Airport operate on the Miles Slack Property and that she intended to fence off the portion of the runway located on her property. *See* Verdict at 3, F.F. 13. Thereafter, on February 27, 2013, PennDOT sent Frederick Slack, Sr. a letter notifying him that the Slack Airport was "officially closed" because, as a result of Appellant's intention to fence off the portion of the runway located on the Miles Slack Property, the airstrip would no longer meet PennDOT's 1200-foot minimum runway length requirement for private airports. *See* Verdict at

4

3-4, F.F. 14-15.  PennDOT's letter informed Frederick Slack, Sr. that the submission of a runway realignment request would be required to initiate a re-licensing action for the continued operation of the Slack Airport.[5]  *See* Verdict at 4, F.F. 16-17.

On March 4, 2013, Fred Slack, Jr. completed the required runway realignment request by submitting a completed PennDOT Form AV-19, Notice of Airport Alteration (Reconfiguration Application).  *See* Verdict at 4, F.F. 18 & 23.  The Reconfiguration Application proposed a reconfiguration of the airstrip located completely on Fred Slack, Jr.'s property, with no portion of Appellant's Miles Slack Property being used for aircraft take offs.  *See* Verdict at 4 & 6-7, F.F. 21-22, 34 & 36.  PennDOT permitted the new runway configuration by letter dated March 22, 2013, and, following an inspection of the new runway in May 2013, authorized flight operations from the Slack Airport's realigned runway on June 13, 2013.  *See* Verdict at 5, F.F. 22-24.[6]

On July 8, 2014, Fred Slack, Jr. submitted to PennDOT a license renewal application for the Slack Airport (Renewal Application).  *See* Verdict at 4, F.F. 20.  PennDOT granted the Renewal Application and issued an airport license

---

[5] PennDOT originally advised that the submission of a PennDOT Form AV-4, Application for a New Airport/Heliport, would be required to initiate an airport re-licensing action.  *See* Verdict at 4, F.F. 16.  PennDOT later clarified that the appropriate form to be submitted regarding the realignment of the runway was PennDOT Form AV-19, Notice of Airport/Heliport Alteration and/or Change of Based Airport.  *See* Verdict at 4, F.F. 17.

[6] The final two Findings of Fact on page 4 of the Verdict are numbered 22 and 23.  *See* Verdict at 4.  The next page of the Verdict, page 5, then begins with two different Findings of Fact that are also numbered as Findings of Fact 22 and 23, although they contain different information from the Findings of Fact from Verdict page 4, also numbered as Findings of Fact 22 and 23.  *See* Verdict at 5.

5

for the Slack Airport on July 15, 2014.[7] *See* Verdict at 5, F.F. 26. Thereafter, Lonergan began operating aircraft from the newly reconfigured airstrip, which now employed the portion of the Heritage Property previously used as a taxiway as part of the runway span, allowing the newly configured runway to comply with PennDOT's 1200-foot minimum runway length without extending onto Appellant's property. *See* Verdict at 5-6, F.F. 29-30.

On March 30, 2017, Appellant, through counsel, forwarded to Buckingham Township a letter requesting that Buckingham Township enjoin Appellees from operating Slack Airport. *See* Letter from Appellant's Counsel to Buckingham Township dated March 30, 2017, Reproduced Record (R.R.) at 212a-38a. When Buckingham Township took no action in response to her letter, Appellant filed her Complaint against Appellees in the trial court on May 17, 2017.[8] *See* Complaint filed May 17, 2017 (Complaint), R.R. at 1a-24a. The trial court conducted a non-jury trial of the matter on June 5, 2019 and issued the Verdict in Appellees' favor on October 4, 2019. *See* Verdict. After the trial court denied Appellant's Motion for Post-Trial Relief by order dated February 7, 2020, Appellant timely appealed to this Court.

---

[7] PennDOT actually issued the airport license to Lonergan, who also submitted an AV-19 Form to PennDOT on July 17, 2014, seeking to change the name of the Slack Airport to "Lonergan's." *See* Verdict at 5, F.F. 27-28. On November 18, 2014, PennDOT granted the application to change the name of the airport on the license from "Slack Airport" to "Lonergan's." *See* Verdict at 6, F.F. 33. Notwithstanding the name change, this Court will continue to refer to the airport/airstrip as the Slack Airport throughout this opinion.

[8] Appellant had included a copy of the Complaint as an attachment to her March 30, 2017 letter to Buckingham Township in accordance with Section 617 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, 53 P.S. § 10617, which requires a complainant to serve upon a municipality a copy of a complaint that alleges land use in violation of an ordinance at least 30 days prior to the institution of such an action.

## II. Issues

Appellant presents three claims on appeal.[9]  *See* Appellant's Br. at 4. First, Appellant claims the trial court erred by concluding that the Slack Airport is a lawful use under the Zoning Ordinance.  *See* Appellant's Br. at 4 & 13-24.  Next, Appellant alleges that the trial court erred by failing to enjoin the operation of the Slack Airport because she proved that she and her property are substantially affected by the operation of the airstrip.  *See* Appellant's Br. at 4 & 25-31.  Third, Appellant claims the trial court abused its discretion by allowing Appellees to argue the affirmative defenses of laches and acquiescence at the trial of this matter.  *See* Appellant's Br. at 4 & 31-41.

## III.  Discussion

## A. Whether the Slack Airport is a lawful use under the Zoning Ordinance.

Appellant bases her first argument solely on the requirements contained in the version of the Zoning Ordinance that became effective in October of 2006 (2006 Zoning Ordinance)[10] and the current version of the Zoning Ordinance (Current Zoning Ordinance),[11] both of which list the operation of an airstrip as a conditional use in Buckingham Township's agricultural districts.  *See* Appellant's Br. at 13-24;

---

[9] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *City of Philadelphia v. Galdo*, 181 A.3d 1289, 1291 n.2 (Pa. Cmwlth. 2018), *aff'd*, 217 A.3d 811 (Pa. 2019) (quoting *Swift v. Dep't of Transp.*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007), *appeal denied*, 950 A.2d 270 (Pa. 2008)).

[10] *See* Buckingham Township Zoning Ordinance of 1975, as amended to October 25, 2006, R.R. at 426a-30a.

[11] *See* Buckingham Township Zoning Ordinance of 1975, as amended to January 24, 2018, R.R. at 431a-37a.

*see also* 2006 Zoning Ordinance at 83 & 93-94, R.R. at 427a-29a; Current Zoning Ordinance at 91-92 & 100-01, R.R. at 433a-36a. Appellant's argument lacks merit, as it completely ignores the historical use of the Slack Airport as an accessory use on the Fred Slack Property.

"Our Supreme Court has long recognized the rule that a property owner may continue an existing use, notwithstanding adoption or change to a zoning ordinance." *Hempfield Twp. v. Hapchuk*, 620 A.2d 668, 671 (Pa. Cmwlth. 1993). Of this "grandfather" rule, the Supreme Court has explained:

> The use of the property which the ordinance protects, or "freezes", is the use which was in existence at the time of the passage of the ordinance or the change of a use district but it offers no protection to a use *different* from the use in existence when the ordinance was passed. The latter does not render the ordinance invalid. The nonconforming use which is within the orbit of protection of the law and the Constitution is the nonconforming use which exists at the time of the passage of the zoning ordinance or the change in a use district under a zoning ordinance, not a *new* or *different* nonconforming use.

*Hanna v. Bd. of Adjustment of Borough of Forest Hills*, 183 A.2d 539, 543-44 (Pa. 1962) (internal citation omitted) (emphasis in original). Thus, this Court has explained that "[t]he adoption of a zoning ordinance does not mandate discontinuance of the existing use of a property affected by the ordinance. A zoning ordinance operates prospectively, only." *Hempfield Twp.*, 620 A.2d at

8

671; *see also Column Realty, LLC v. Zoning Hearing Bd. of City of Allentown* (Pa. Cmwlth., No. 1544 C.D. 2014, filed Mar. 30, 2015),[12] slip op. at 18.

Here, prior to 1984, no iteration of the Zoning Ordinance included any provision requiring zoning approval to operate a private airstrip within Buckingham Township. *See* Buckingham Township Ordinance No. 2 of 1951, adopted November 24, 1951 (1951 Zoning Ordinance), R.R. at 365a-88a; Buckingham Township Zoning Ordinance of 1975, adopted March 6, 1975, as amended March 18, 1976 (1975 Zoning Ordinance), R.R. at 389a-404a. In fact, prior to 1984, the Zoning Ordinance did not include any reference whatsoever to air landing fields or airstrips. *See id.* Beginning in 1984, the Zoning Ordinance recognized an "Air Landing Field," defined as "[a] private, noncommercial air landing field," as a permitted accessory use[13] in Buckingham Township's agricultural zoning district. *See* Buckingham Township Zoning Ordinance of 1975, as amended August 29, 1984 (1984 Zoning Ordinance) at 98, R.R. at 397a. Under the 1984 Zoning Ordinance, qualification of an air landing field as an accessory use was conditioned on only one requirement: approval from PennDOT's Bureau of Aviation. *See id.*

In 1994, Buckingham Township enacted the next iteration of its zoning ordinance, which added further requirements for a use to qualify as what the zoning ordinance now termed an "Air Landing Strip."[14] *See* Buckingham Township Zoning

---

[12] Pursuant to Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

[13] The Zoning Ordinance defines "accessory use" as "[a] use located on the same lot with the principal use, and clearly incidental or subordinate to, and in connection with, the principal use." Verdict at 7, F.F. 39.

[14] Specifically, the 1994 Zoning Ordinance provided:

Ordinance of 1994, enacted August 24, 1994 (1994 Zoning Ordinance) at 68; R.R. at 408a.  However, under the 1994 Zoning Ordinance and subsequent amendments,[15] qualifying air landing strips located in Buckingham Township's agricultural districts

H6  Air Landing Strip

A private airport landing strip may be permitted as an accessory use to a single-family residence (Use B-1) or to use A-1 in the [Agricultural] districts provided that the following regulations are met:

A. The minimum lot size on which an airlanding strip is permitted shall be 30 acres.

B. The outside limits of the air landing strip shall be located 300 feet from any property line and from any public road.

C. No commercial flight activities shall be permitted.

D. The private air landing strip shall meet all the regulations of the Pennsylvania Department of Transportation, Bureau of Aviation, and shall have the approval of this agency and of any other airstrip licensing agencies of the federal or state government.

E. No activities shall be permitted which will violate the regulations of this Ordinance or any other Township ordinance controlling noise, dust, dirt, electrical disturbance, hazards or other nuisances.

F. No air strip shall be established if its flight pattern will overlap with the flight pattern of any existing air landing field or heliport.

G. All buildings associated with the air strip, including hangars, landing pads, warm-up pads, refueling facilities, lights, etc.[,] shall be placed at least 100 feet from the property line of the lot.

1994 Zoning Ordinance at 68, R.R. at 408a.

[15] The 1994 Zoning Ordinance was amended three times in 1995, twice in 1996, twice in 1997, and a further time in 1998.  *See* R.R. at 406a.

remained categorized as permitted accessory uses. *See* 1994 Zoning Ordinance at 68 & 73-74, R.R. at 408a-10a.

In 2005, Buckingham Township enacted an updated zoning ordinance that again identified an "Air Landing Strip" as a permitted accessory use in the township's agricultural districts. *See* Buckingham Township Zoning Ordinance of 1975, as amended to October 19, 2005 (2005 Zoning Ordinance) at 76-77, R.R. at 418a-19a. Not until the it was amended again in 2006 did the Zoning Ordinance categorize an air landing strip as a conditional use requiring conditional use approval under the Zoning Ordinance. *See* 2006 Zoning Ordinance at 94, R.R. at 429a.

All evidence presented at trial in the instant matter indicates that the Slack Airport has been in continuous use and properly licensed through PennDOT's Bureau of Aviation since 1959. Therefore, upon the enactment of the 1984 Zoning Ordinance that first categorized an air landing strip as an accessory use, the Slack Airport was in compliance with the only requirement necessary under the Zoning Ordinance for an airstrip to qualify as a permitted accessory use in an agricultural zoning district: approval from PennDOT's Bureau of Aviation. Therefore, the Slack Airport was a permitted accessory use under the 1984 Zoning Ordinance. Further, because amendments to zoning ordinances operate only prospectively, the subsequent changes and amendments to the Zoning Ordinance, including the 2006 amendment that categorized airstrips as conditional uses thereafter, did not mandate discontinuance of Appellees' then preexisting lawful nonconforming use of the Slack Airport as an accessory use, which use had continued uninterrupted for decades preceding the 2006 Zoning Ordinance. *Hanna*; *Hempfield Twp.* As the trial court expressly and correctly determined:

11

> Even without conditional use approval, the operation of the [Slack Airport] on these properties does not violate the [] Zoning Ordinance because the airstrip has been in existence, essentially in its current location, since at least 1959.

Verdict at 9, Conclusions of Law (C.L.) 3.

For these reasons, the trial court did not err by determining that the Slack Airport was a lawful use under the Zoning Ordinance.[16]

**B. Whether Appellant has proven that the operation of the Slack Airport substantially affects the quiet enjoyment or use of her property.**

Next, Appellant claims that the trial court erred by refusing to enjoin the operation of the Slack Airport because her property is substantially affected by considerable noise generated by planes taking off from the airstrip. *See* Appellant's Br. at 25-31. Appellant argues that violation of a zoning ordinance alone is enough to justify an injunction preventing the violative action. *See id.* at 25-26. Further, she claims that she proffered sufficient evidence that both she and her property are substantially affected by the noise created by airplanes taking off at the Slack Airport. *See id.* at 28-29. Appellant is not entitled to relief on this claim.

Appellant argues that the evidence presented at trial sufficiently established that both she and her property are substantially affected by the operation of the Slack Airport to merit injunctive relief. *See* Appellant's Br. at 30-31. Appellant testified that she can see and hear airplanes taking off from the Slack Airport. *See* Notes of Testimony, June 5, 2019 (N.T.) at 69, R.R. at 141a. She

---

[16] To the extent Appellant argues that the use of the Slack Airport as an accessory use somehow would not inure to Lonergan because he does not reside at the Fred Slack Property or the Heritage Property, *see* Appellant's Br. at 17, we note that no version of the Zoning Ordinance contains a pilot residency requirement that would in any way affect the Slack Airport's zoning status as an accessory use to the Fred Slack Property.

explained that Lonergan's bi-plane makes considerable noise when it takes off over her property, and that she can hear it from inside her house. *See* N.T. at 70; R.R. at 142a. Appellant testified that the airplanes taking off from Slack Airport pass over her property at a height of only 50 feet. *See* N.T. at 71, R.R. at 143a. Appellant originally described the noise created by the airplanes at the Slack Airport upon takeoff as "[e]ar deafening[,]" but then stated, "[w]ell, maybe I can't use that term[,]" before revising her description to simply "very loud, very noisy – a lot of noise." N.T. at 70; R.R. at 142a. Further, Appellant testified that there is no limit to the number of takeoffs and landings allowed at the Slack Airport. *See* N.T. at 116-17, R.R. at 188a-89a. She argues that the admitted video of one of Lonergan's takeoffs illustrates the substantial noise generated by aircraft operation at the Slack Airport. *See* N.T. at 87-89, R.R. at 159a-61a; *see also* Appellant's Br. at 31. Ultimately, Appellant testified that she and her property are directly affected by the operation of the airstrip. *See* N.T. at 73, R.R. at 145a.

Lonergan testified at trial that he has been flying planes out of Slack Airport since the mid-1990s. *See* N.T. at 93, R.R. at 165a. He explained that, when he began using the Slack Airport, multiple individuals flew out of or maintained aircraft at the airstrip. *See* N.T. at 95, R.R. at 167a. He testified that he used the Slack Airport about 20 times in the preceding year, although he conceded that he can take off as many times as he would like. *See* N.T. at 117-18, R.R. at 189a-90a. He further explained that, while he is allowed to take off directly over the Miles Slack Property, he rarely does so, and instead prefers to veer away from the Miles Slack Property upon takeoff and prior to crossing the property line out of courtesy

13

to Appellant.[17] *See* N.T. at 98-100 & 116-17, R.R. at 170a-72a & 188a-89a. Additionally, Lonergan explained that the takeoff depicted in the admitted video showed a relatively unique takeoff involving multiple special circumstances occasioned by a number of factors that required him to fly directly over Appellant's property on that particular instance, but that the video did not represent his normal post-takeoff flight path. *See* N.T. at 98-100, R.R. at 170a-72a.

"It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence." *Laurel Rd. Homeowners Ass'n, Inc. v. Freas*, 191 A.3d 938, 952 (Pa. Cmwlth. 2018). As has been oft explained:

> This Court . . . cannot upset the trial court's credibility determinations or reweigh the evidence to reach a finding contrary to the trial court. Inconsistencies in the evidence go to the weight of the evidence, and we will respect a trial court's findings with regard to the credibility and weight of the evidence unless the Declarants can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

*Id.* (internal citations and quotation marks omitted).

Contrary to Appellant's suggestion that the evidence was sufficient to entitle her to injunctive relief, the trial court considered the evidence presented, including Appellant's testimony and the admitted video, and expressly determined that the Slack Airport's "newly configured runway does not interfere with

---

[17] In fact, Lonergan testified that the Federal Aviation Administration (FAA) and the PennDOT Bureau of Aviation prefer that airplanes take off from the Slack Airport straight, proceeding directly over the Miles Slack Property, but that deviating from that flight path does not constitute an FAA flight operation violation. *See* N.T. at 116-17, R.R. at 188a-89a.

[Appellant's] quiet enjoyment of her property[,]" "does not in any way infringe upon [Appellant's] property or prevent the construction of a fence for her property," and "does not negatively impact nor is it injurious to [Appellant's] property." Verdict at 9, C.L. 1 & 5-6. Notwithstanding Appellant's own testimony, we find nothing in the record to merit overturning the trial court's determinations regarding the credibility and weight of evidence presented before it – which determinations are within the exclusive province of the trial court.

Further, we are unpersuaded by Appellant's attempt to somehow distinguish the fact that the trial court did not make a specific finding that Appellant is *not* substantially affected by the operation of the Slack Airport, *see* Appellant's Br. at 29-30, from the multiple express findings the trial court *did* make, namely that the Slack Airport does not interfere with or negatively impact the use or the quiet enjoyment of her property. *See* Verdict at 9, C.L. 1 & 5-6. The trial court's conclusions of law leave no doubt that the trial court viewed the flight operations of the Slack Airport as not substantially affecting Appellant or her property.

We further note that Appellant's reliance on *Siegmond v. Duschak*, 714 A.2d 489 (Pa. Cmwlth. 1998), is misplaced. To the extent *Siegmond* stands for the proposition that a landowner may be substantially affected by an increase in noise and activity on adjacent land, the case is distinguishable on the facts. The evidence in this matter did not reveal a marked increase in activity at the Slack Airport. If anything, the evidence revealed that the Slack Airport now supports the operation of fewer planes than in the past, during the time when Appellant and her husband were using the airport themselves and/or collecting rents based on the operation thereof. *See supra* note 4. Therefore, Appellant improperly relies on *Siegmond* to support her alleged entitlement to injunctive relief.

15

For these reasons, Appellant's second issue does not merit relief.

**C. Whether the trial court erred by allowing Appellees to argue the equitable defenses of laches and acquiescence.**

In her third claim, Appellant alleges that the trial court erred by finding that Appellees were entitled to argue the affirmative defenses of laches and acquiescence in this matter. *See* Appellant's Br. at 31-41. We do not agree.

"[T]he doctrine of laches [is] an equitable bar to the prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared." *In re Wilkinsburg Taxpayers & Residents Interest in Green St. Park Sale to a Private Developer & Other Park-Sys. Conditions*, 200 A.3d 634, 642 (Pa. Cmwlth. 2018) (internal quotation marks omitted). "A claim is barred by laches where the party failed to exercise due diligence, which resulted in prejudice to the opposing party." *Id.* "The test for due diligence is not what a party knows, but what he might have known by the use of information within his reach. Prejudice may be found where there has been some change in the condition or relations of the parties which occurs during the period the complainant failed to act." *Id.* (quoting *White v. Township of Upper St. Clair*, 968 A.2d 806, 811 (Pa. Cmwlth. 2009), *appeal denied*, 995 A.2d 355 (Pa. 2010)).

In explaining its determination to allow Appellees to argue laches in this matter, the trial court noted:

> In this case, the airport has existed since 1959, and has been in use since. Even after [Appellant's] husband passed away, she waited four (4) years to bring any claims against [Appellees]. [Appellees] utilized and came to rely upon the use of the runway during this period. Further, after fifty (50) years of use with no issue, [Appellees] were

16

prejudiced by having to defend their use of the runway after fifty (50) years have passed.

Trial Court Opinion at 8-9 (footnote omitted). We find no error in the trial court allowing Appellees to argue the equitable defense of laches under the facts of this case.

Similarly, the equitable concept of municipal acquiescence may provide relief to an innocent landowner acting in good faith regarding an illegal land use where the municipality has failed to enforce the law or otherwise somehow acquiesced in the illegal use for a considerable period of time. *See Caporali v. Ward*, 493 A.2d 791, 793 (Pa. Cmwlth. 1985). Regarding its determination to allow Appellees to argue acquiescence, the trial court explained:

> In this case, the Township was aware of the runway, the Township updated the Zoning Ordinance to make the runway an accessory use, and the Township has taken no action to enjoin the use of the runway. Further, [Appellant] permitted the use of the runway on her property for over fifty years, with her late husband utilizing the runway to fly. The facts of this case clearly establish that the affirmative defense of acquiescence applies to this case.

Trial Court Opinion at 9. We agree with the trial court that the facts of this case entitled Appellees to argue that the affirmative defense of acquiescence applied to this matter and find that the trial court did not err by allowing Appellees to do so at trial.

17

## IV. Conclusion

For the above reasons, we affirm the February 7, 2020 trial court order denying post-trial relief.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wanda Slack,　　　　　　　　　　　　:
　　　　　　Appellant　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
Frederick J. Slack, Jr.,　　　　　　　:　No. 231 C.D. 2020
and James D. Lonergan　　　　　　　:

# O R D E R

AND NOW, this 16th day of April, 2021, the February 7, 2020 order entered by the Court of Common Pleas of Bucks County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge