IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition of the Wilkinsburg   :
Taxpayers and Residents Interest in   :
Green Street Park Sale to a   :    No. 120 C.D. 2018
Private Developer and other   :
Park-Systems Conditions   :    Submitted: September 14, 2018
  :
Appeal of: Kate Luxemburg   :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE McCULLOUGH                            FILED: December 17, 2018


Kate Luxemburg, on behalf of a group of taxpayers and residents of the Borough of Wilkinsburg (hereafter, Appellants), appeals from the December 11, 2017 order of the Orphans' Court Division of the Court of Common Pleas of Allegheny County (Orphans' Court) that sustained the preliminary objections filed by the School District of Wilkinsburg (District) and Akator Construction, LLC (Developer) and dismissed Appellants' petition seeking to condition the sale of property to Developer or, alternatively, to void the sale and eject Developer from the property.


**Facts and Procedural History**

The property at issue in this case is identified by the Allegheny County Department of Real Estate as Lot & Block #176-F-170 located at the northwest corner of the intersection of Green Street and Mifflin Avenue in the Borough (the Property).

(Orphans' Court op. at 1; Finding of Fact No. 1.) The Property is known locally as "Green Street Park" and has been the subject of previous litigation before the Civil Division of the Court of Common Pleas of Allegheny County (trial court) and this Court. *See In re Petition of Wilkinsburg School District for Court Approval of The Sale of Vacant Land* (Pa. Cmwlth., No. 1890 C.D. 2013, filed October 8, 2014).[1] In our earlier decision, we affirmed the order of the trial court approving the District's petition to sell the Property to Developer pursuant to section 707(3) of the Public School Code of 1949 (Public School Code).[2]

> We noted in our earlier decision that:

> Since 1970, the Property was used as a park and was maintained by the Borough. In the summer of 2011, the Borough informed the School District that the Borough would no longer maintain the Property as a park and that any future maintenance would be the School District's responsibility. Between October 2011 and February 2012, the School District and the Borough considered and discussed potential conveyance of the Property to the Borough. In February 2012, the Borough notified the School District that it was not interested in acquiring title to the Property.

> Over the course of several months, the School District's Board of Directors (School Board) discussed the status of the Property at public meetings and reached a consensus that the School District did not use the Property and that the Property was unnecessary.

> In May 2012, the Borough informed the School District that [Developer] was interested in purchasing the Property. At

---

[1] Friends of Green Street Park, an unincorporated association of individuals, some of whom are Appellants herein, had objected to the sale.

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §7-707(3). This section allows public school districts to petition the local common pleas court to sell unused and unnecessary lands and buildings via private sale.

2

the School Board's meeting on December 18, 2012, a Motion was made, and seconded, to approve the "Agreement of Sale" between the School District and [Developer] to sell the Property for $71,000.00. The Motion was carried by unanimous vote.

In April of 2013, the School District filed a Petition for Court Approval of the Private Sale of Vacant Land pursuant to Section 707(3) of the Public School Code, 24 P.S. §7-707(3).

. . .

In response, Objectors argued that the School District was required to pass a separate resolution or motion specifically finding that the Property was "unused and unnecessary" before determining whether to sell. Objectors also argued that the Property was "used" by adults and the children in the neighborhood and was "necessary" green space.

*Id.*, slip op. at 2-4.

On July 22, 2015, the Property was conveyed to Developer for $71,000.00, which we noted in our earlier decision was the fair market value of the Property as determined by an appraisal commissioned by the District.[3] (Orphans' Court op. at 1; Finding of Fact No. 4.) Developer later applied to Borough Council for a land use permit to subdivide the Property but, following a public hearing, its application was denied at a Borough Council meeting on May 4, 2016. (R.R. at 108a, 113a.) By letter dated May 6, 2016, Borough Council notified Developer of its decision. (R.R. at 225a.) Developer thereafter filed a notice of land use appeal with the trial court. (R.R. at 226a-30a.) By opinion and order dated February 2, 2017, the trial court reversed the decision of the Borough Council denying the permit and approved Developer's subdivision plan. (R.R. at 436a-40a.)

---

[3] A deed was recorded in the Allegheny County Department of Real Estate the next day. (Reproduced Record (R.R.) at 1a.)

Shortly thereafter, on May 10, 2017, Appellants filed the present petition with the Orphans' Court to condition the sale of Property to Developer or, alternatively, to void the sale and eject Developer from the Property. At the very least, Appellants sought replacement lands for outdoor use to make up for the loss of the Property. Appellants asserted standing under the common law public trust doctrine[4] and the act commonly known as the Donated or Dedicated Property Act (DDPA).[5] Appellants premised their current petition on the common law public trust doctrine, the DDPA, and the Inalienable Property Act (IPA),[6] which Appellants noted had not been addressed in any prior litigation. Appellants described the litigation in this matter as arising from the failure of the District or the Borough to properly record a deed in 1957 transferring the Property from the District to the Borough. Appellants noted that in 1957 both the District and the Borough Council passed matching resolutions relating to the transfer of the Property to the Borough.[7] While the resolutions directed that a deed be prepared, Appellants acknowledged that no deed was ever recorded.

---

[4] "Under the common law public trust doctrine, when land has been dedicated and accepted for public use, a political subdivision is estopped from interfering with or revoking the grant at least so long as the land continues to be used, in good faith, for the purpose for which it was originally dedicated." *In re Estate of Ryerss*, 987 A.2d 1231, 1237 n.8 (Pa. Cmwlth. 2009) (citation omitted).

[5] Act of December 15, 1959, P.L. 1772, 53 P.S. §§3381-3386.

[6] 20 Pa.C.S. §§8301-8306.

[7] Appellants attached an exhibit to their petition reflecting the minutes of a January 15, 1957 District meeting approving a resolution authorizing the sale of the Property to the Borough, along with the resolution itself. (R.R. at 77a-80a.) Appellant also attached a copy of a March 11, 1957 resolution from the District noting its acceptance of the Borough's offer for the Property, along with minutes from that meeting wherein the resolution was approved. (R.R. at 81a-82a.) These minutes included the authorization of the District's Solicitor to prepare a deed conveying the Property.

4

Nevertheless, from that time until 2011, Appellants alleged that the actions of the parties reflect the understanding that the Borough owned the Property. Appellants pointed to a certificate of title prepared and signed by the Borough Solicitor in 1981 indicating Borough ownership of the Property for the purpose of obtaining grant monies for park improvements from the Department of Community Affairs' Land and Water Conservation Fund (LWCF).[8] Appellants stated that the 1957 resolutions and 1981 certificate of title were only recently discovered. Consequently, Appellants averred that the prior litigation did not consider any covenants, conditions, or restrictions in the public's interest arising from state and federal resources and regulations related to LWCF funding. Further, Appellants alleged that approval of the sale of the Property under the Public School Code was misplaced because the Property was not associated with school grounds, but instead was dedicated to public use as a local park. Appellants stated that the prior litigation did not absolve the Borough from its obligations under the aforementioned doctrines and statutes.

Finally, Appellants pointed to a July 5, 2016 letter to the Borough from the Department of Conservation and Natural Resources' LWCF Coordinator noting the 1981 certificate of title and the Borough's acceptance of LWCF funds, which required that the Property be maintained in public ownership for public, outdoor recreational uses in perpetuity.[9] The letter noted that the Borough's sale to a private developer constituted "a conversion of LWCF-protected park property, which must be resolved in accordance with the National Park Service's regulatory guidelines," which in turn

---

[8] Appellants attached a copy of this certificate to their petition. (R.R. at 84a.)

[9] Appellants attached a copy of this letter to their petition. (R.R. at 68a-70a.)

requires the Borough to "identify replacement land of equal or greater fair market value . . . and reasonably equivalent recreational usefulness." (R.R. at 69a.)

In their prayer for relief, Appellants sought an order directing the Borough to develop plans for replacement outdoor recreation lands in accordance with the July 5, 2016 letter from the LWCF Coordinator, a stay of the trial court's February 2, 2017 order approving Developer's subdivision plan, and an order directing Developer to cease and desist from any development of the Property. Alternatively, Appellants requested that the Orphans' Court consider voiding the agreement of sale between the District and Developer and commence an action in ejectment.

Both the District and Developer filed preliminary objections to Appellants' petition. In their respective preliminary objections, both the District and Developer contended, *inter alia*, that the petition was barred by the doctrines of *res judicata* and/or laches.[10] Regarding the former, the District and Developer contended that Appellants' current claims could have been raised in the 2013 proceedings contesting the sale of the Property. Both the District and Developer noted that, contrary to Appellants' contention that they were not aware of the 1957 resolutions and 1981 certificate of title accompanying the Borough's grant application at that time, Appellants extensively referenced the 1957 resolutions and grant application in their

---

[10] The District further alleged in its preliminary objections that Appellants' claims were barred as a result of the *in rem* judgment that arose out of the 2013 proceedings and was binding on both the 2013 parties and any future parties that would assert an interest in the Property; that there was no private cause of action relating to grant monies received from the LWCF; and that Appellants failed to state a cognizable claim under the common law public trust doctrine, the DDPA, or the IPA.

Developer further alleged in its preliminary objections that the sale of the Property was proper under the common law public trust doctrine, the DDPA, or the IPA and that voiding a sale was not a remedy under the same. Alternatively, Developer averred that it had no obligation to remedy a violation of the common law public trust doctrine, the DDPA, or the IPA.

6

second objections to the District's second amended petition seeking approval of the sale of the Property to Developer.

Regarding laches, the District and Developer contended that Appellants failed to exercise due diligence by waiting nearly four years to raise the claims in their current petition. Developer noted that Appellants essentially admitted in paragraph 21 of their present petition that they were aware of the 1957 resolutions and grant application in late 2014 or very early in 2015, as the discovery of the same prompted the Borough to file a petition against the District to quiet title to the Property on January 16, 2015.[11] In other words, Appellants were aware of the 1957 resolutions and grant application at least six months prior to the July 22, 2015 conveyance of the Property to Developer and still waited until nearly two years after this conveyance to file the present petition. The District and Developer asserted that Appellants' delay in raising their current claims operated to prejudice their respective positions.

By order dated December 11, 2017, the Orphans' Court sustained the preliminary objections of the District and Developer and dismissed Appellants' petition. In an accompanying opinion, the Orphans' Court concluded that it could not overrule the 2013 order as affirmed by this Court. The Orphans' Court noted that the 2013 proceeding was *in rem* and, therefore, the judgment in that proceeding was binding on everyone, even if they were not a party to that action. Further, the Orphans' Court concluded that the doctrines of *res judicata* and laches bar Appellants' petition.

**Discussion**

_____

[11] The Borough withdrew this petition in March 2015.

7

On appeal,[12] Appellants argue that the Orphans' Court erred in sustaining the preliminary objections of the District and Developer on the basis of the doctrines of *res judicata* and laches. We disagree.

## Res Judicata

The doctrine of *res judicata* precludes the relitigation of issues decided in a prior valid judgment in any future suit between the parties on the same cause of action. *Bell v. Township of Spring Brook*, 30 A.3d 554, 557 (Pa. Cmwlth. 2011). Generally, for *res judicata* to apply, "there must be a concurrence of four conditions: (1) identity of the issues, (2) identity of causes of action, (3) identity of persons and parties to the action, and (4) identity of the quality or capacity of the parties suing or sued." *Safeguard Mutual Insurance Company v. Williams*, 345 A.2d 664, 668 (Pa. 1975). However, the doctrine of *res judicata* applies not only to matters decided, but also to matters that could have, or should have, been raised and decided in an earlier action. *Bell*, 30 A.3d at 558. The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights. *Callery v. Municipal Authority*, 243 A.2d 385, 387 (Pa. 1968).

As both the District and Developer noted in their respective preliminary objections, contrary to Appellants' contention that they were not aware of the 1957

---

[12] In reviewing a common pleas court's order sustaining preliminary objections, "the standard of review is *de novo* and the scope of review is plenary." *Williams v. City of Philadelphia*, 164 A.3d 576, 584 (Pa. Cmwlth. 2017). In ruling on preliminary objections, a court must accept as true all well-pleaded material allegations in the complaint, as well as all inferences reasonably deduced therefrom. *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). The court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

8

resolutions and 1981 certificate of title accompanying the Borough's grant application during the 2013 proceedings, Appellants extensively referenced the 1957 resolutions and grant application in these proceedings, namely in their second objections to the District's second amended petition seeking approval of the sale of the Property to Developer. In fact, Appellants relied on the same in support of their argument that the Borough, not the District, was the actual owner of the Property. However, the trial court rejected this argument in the 2013 proceedings and approved the District's sale of the Property to Developer, a decision which was later affirmed by this Court.

Thus, Appellants were well aware in 2013 of the facts upon which they now rely to assert claims under the common law public trust doctrine, the DDPA, and the IPA. Appellants had every opportunity to raise any legal theories supported by these factual premises during the 2013 proceedings. Indeed, in their brief, Appellants state that Developer was aware of the "Public Trust Issues" regarding this Property because those issues were raised "at the municipal agency level and in a 9/24/2013 hearing" before the trial court. (Appellants' Brief at 17.) Even if jurisdiction over these claims may not have been proper in the trial court in 2013, an issue we need not decide here, Appellants could have raised these issues and sought transfer to the Orphans' Court or filed a separate action in the Orphans' Court addressing the same.

Further, Appellants' reliance on this Court's prior decision in *In re Estate of Ryerss*, 987 A.2d 1231 (Pa. Cmwlth. 2009), is misplaced. Appellants rely on *In re Estate of Ryerss* in support of their argument that either the District or the Borough was required to seek Orphans' Court approval of the conversion of the public trust purposes of the Property via its sale to Developer. In that case, Fox Chase Cancer Center had sought to lease 19 acres of land that had been devised to the City of Philadelphia for use as a park in order to expand its cancer research facility. The City filed a petition

9

for authorization to lease the land with the Orphans' Court Division of the Court of Common Pleas of Philadelphia County, but the same was denied under the common law public trust doctrine and the IPA. On appeal, this Court affirmed. While we concluded that the Philadelphia County's Orphans' Court had erred by failing to apply the DDPA, we nonetheless held that the City had failed to establish its entitlement to relief under the DDPA.

Appellants point to our holding in that case that the DDPA "commands that lands . . . held by a political subdivision as trustee 'shall be used for the purposes for which they were originally dedicated or donated,' except as modified by court order pursuant to the [DDPA]." *Id.* at 1238-39 (citing *In re Erie Golf Course*, 963 A.2d 605, 611-12 (Pa. Cmwlth. 2009), *vacated on other grounds*, 992 A.2d 75 (Pa. 2010)). While this holding remains intact, *In re Estate of Ryerss* is distinguishable from the present case. In *In re Estate of Ryerss*, we did not address the issue of the failure of a political subdivision to seek court approval of the redevelopment of property under the common law public trust doctrine, the DDPA, or the IPA because the City in that case had filed a petition seeking approval of the lease under the IPA or any other applicable law. Additionally, the property in *In re Estate of Ryerss* had been formally dedicated for use as a park through a City ordinance accepting the property from the devisee who had conditioned the use of the property as a park after his death. In the present case, while the original intent of the District may have been to convey the Property to the Borough on the condition that it be used "solely for playground purposes," R.R. at 79a, the fact remains that the Property was never properly conveyed to the Borough nor was it ever formally dedicated for public use.[13]

---

[13] Appellants also rely on *Bruker v. Carlisle Borough*, 102 A.2d 418 (Pa. 1954), for support. However, *Bruker* is similarly distinguishable. The *Bruker* case involved the use of a corner of the

Because Appellants could have raised claims regarding the common law public trust doctrine, the DDPA, and the IPA in the 2013 proceedings, the trial court did not err to the extent that it concluded that the doctrine of *res judicata* barred Appellants' petition.

## Laches

A claim is barred by laches where the party failed to exercise due diligence, which resulted in prejudice to the opposing party. *Pennsylvania Social Services Union, Local 688 v. Commonwealth*, 59 A.3d 1136, 1144 (Pa. Cmwlth. 2012). "The test for due diligence is not what a party knows, but what he might have known by the use of information within his reach. Prejudice may be found where there has been some change in the condition or relations of the parties which occurs during the period the complainant failed to act." *White v. Township of Upper St. Clair*, 968 A.2d 806, 811 (Pa. Cmwlth. 2009), *appeal denied*, 995 A.2d 355 (Pa. 2010). Further, we have described the doctrine of laches as "an equitable bar to the prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared." *Pfeifer v. Westmoreland*

---

square in the center of the Borough of Carlisle as a public market that dated back in excess of 200 years. Our Supreme Court in *Bruker* concluded that such extended use was "sufficient to raise a conclusive presumption of an original grant for the purpose of a public square," and the public use must be maintained. *Id.* at 421. However, the court in *Bruker* did not address the doctrines of *res judicata* or laches. Further, Developer describes the Property in the years prior to and up to the time of the sale as having fallen into disrepair and overgrown due to a lack of use and maintenance. *See* Developer's brief at 4. Indeed, in our 2013 decision affirming the trial court's approval of the sale of the Property to Developer, we described the Property as merely consisting of "low concrete walls, grassy areas, and a deteriorated basketball court," *In re Petition of Wilkinsburg School District for Court Approval of The Sale of Vacant Land*, slip op. at 2, which appears to confirm Developer's description and disproves an extended public use.

11

*County Tax Claim Bureau*, 127 A.3d 848, 854 (Pa. Cmwlth. 2015), *appeal denied*, 138 A.3d 7 (Pa. 2016).

Appellants contend that the doctrine of laches does not apply here because they raised the public trust issues within three months of the final adjudication allowing the conversion of the Property. Presumably, Appellants are referencing the trial court's February 2, 2017 order that reversed the decision of Borough Council denying Developer's application for a land use permit and approved Developer's subdivision plan. Appellants' petition was filed approximately three months later in May of 2017. Appellants again rely on *Bruker*, as well as *Conwell v. Philadelphia & Reading Railway Co.*, 88 A. 417 (Pa. 1913), for support. We noted above that *Bruker* is distinguishable from the present case. *Conwell* is similarly distinguishable as it did not address the doctrines of *res judicata* or laches and only focused on the application of the statute of limitations for adverse possession in a railroad right of way determined to be held by the railroad company in trust for the public use.

In the present case, the averments in Appellants' petition demonstrate a lack of due diligence in raising and advancing their claims under the common law public trust doctrine, the DDPA, or the IPA. In their petition, Appellants acknowledge that the 2013 proceedings involved the sale of the Property to Developer. As noted above, a review of those proceedings reveals that Appellants were aware at that time of the 1957 resolutions and the grant application upon which their current claims are based. Hence, Appellants had notice of these issues as early as 2013. Alternatively, Appellants essentially acknowledge their awareness of these issues by the end of 2014 or the beginning of 2015, some two years before they filed the present petition. Further, Appellants state in paragraph 24 of their petition that after the deed to the Property was recorded on July 23, 2015, Developer proceeded to apply for a land use permit to

subdivide the Property for private, residential development. Hence, at the very latest, Appellants were aware of Developer's intent to develop the property in mid-2015.

Despite their awareness of the underlying ownership and public trust issues, Appellants did not file a petition raising these issues until May 2017, four years after the 2013 proceedings in which many of the current Appellants appeared and objected to the sale of the Property to Developer and, at the very latest, nearly 2 years after they had knowledge of Developer's intent to subdivide the Property into private residences. Subsequent to the trial court's 2013 decision approving the sale, and this Court's 2014 affirmance of the same, the District and Developer closed on the sale of the Property, Developer proceeded with a plan of subdivision, and Developer expended significant sums of money in seeking and eventually obtaining a land use permit and approval of its plan. To allow Appellants to now challenge the sale of the Property on grounds that could have been raised years earlier would certainly be prejudicial to Developer, both in terms of monies expended and the length of time during which Developer has essentially been deprived of the use of the Property.

Because Appellants failed to exercise due diligence in raising the public trust issues during the 2013 proceedings or in the immediate years thereafter and the delay in raising these issues would result in prejudice to Developer, the trial court did not err to the extent that it concluded that the doctrine of laches barred Appellants' petition.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

13

Judge Wojcik did not participate in this decision.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition of the Wilkinsburg     :
Taxpayers and Residents Interest in     :
Green Street Park Sale to a     :    No.  120 C.D. 2018
Private Developer and other     :
Park-Systems Conditions     :
    :
Appeal of:  Kate Luxemburg     :

## ***ORDER***

AND NOW, this 17th day of December, 2018, the order of the Orphans' Court Division of the Court of Common Pleas of Allegheny County, dated December 11, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge