IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Preservation of FDR Park | : | |
| | : | |
| Richard Garella; Harold Hurwitz; | : | |
| Angelo Altadonna; Tom Piccone; | : | |
| David Gibson; Carolina Torres Toledo; | : | |
| Brian Jeans; Avigail Milder; Anisa George; | : | |
| and Denise-Nanette Morinich, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 545 C.D. 2024 |
| | : | Argued: June 3, 2025 |
| City of Philadelphia c/o Philadelphia | : | |
| Law Dept.; Fairmount Park | : | |
| Conservancy, private non-profit corp.; | : | |
| Philadelphia Department of Parks | : | |
| and Recreation, organized under the | : | |
| City of Philadelphia pursuant to Home | : | |
| Rule Charter and Pa. Statutes; Mayor | : | |
| Cherelle Parker, duly elected mayor of | : | |
| the City of Philadelphia Office of the | : | |
| Mayor; and City Council of Philadelphia, | : | |
| duly elected government body of the City | : | |
| of Philadelphia through the Home Rule | : | |
| Charter c/o Philadelphia Law Dept. | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge (P.)
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  August 13, 2025


Richard Garella, Harold Hurwitz, Angelo Altadonna, Tom Piccone, David Gibson, Carolina Torres Toledo, Brian Jeans, Avigail Milder, Anisa George, and Denise-Nanette Morinich (collectively, Neighbors) seek to enjoin the destruction of natural meadows and woodlands within Franklin Delano Roosevelt Park (FDR Park).  The City of Philadelphia, Philadelphia Department of Parks and

Recreation, Mayor Cherelle Parker, and City Council of Philadelphia (collectively, the City) and the Fairmount Park Conservancy (Conservancy) filed preliminary objections to Neighbors' complaint. They asserted that the Orphans' Court Division of the Court of Common Pleas of Philadelphia County (Orphans' Court) lacked jurisdiction over the subject matter of the complaint; the complaint was legally insufficient; and the Conservancy was not a proper defendant. Concluding that it lacked jurisdiction, the Orphans' Court declined to conduct a hearing on Neighbors' request for a preliminary injunction; dismissed Neighbors' complaint; and refused to stay further activity on FDR Park until the requests for declaratory and injunctive relief are resolved. Thereafter, the Orphans' Court dismissed the outstanding preliminary objections as moot.

Neighbors have appealed the dismissal of their complaint and the denial of a hearing on their petition to stay all further activity on FDR Park until the Orphans' Court enters a judgment on their underlying complaint. We reverse the Orphans' Court holding that it lacked subject matter jurisdiction and remand the matter to the Orphans' Court to address the outstanding petition for preliminary injunction and the demurrers to the complaint that were filed by the City and the Conservancy.

## Background

Created in 1894, FDR Park is a 348-acre public park located along the Delaware River in South Philadelphia, stretching from 11th Street to 20th Street. Complaint ¶¶20, 22; Reproduced Record at 43-44 (R.R. __).[1] FDR Park includes

---

[1] Pennsylvania Rule of Appellate Procedure 2173 requires that the reproduced record be numbered in Arabic figures followed by a small "a." Pa.R.A.P. 2173. The reproduced record does not comply with Rule 2173 because it is paginated with a capital "A" followed by Arabic numerals. For convenience, we cite to each page by the Arabic figures only.

trails, ponds, recreational areas, and athletic fields; its varied wetlands and waterways provide a habitat for birds and wildlife. Complaint ¶31; R.R. 46. The parcels of land that make up FDR Park were assembled over a period of years, beginning in 1894 with League Island Park. Complaint ¶22; R.R. 44. At issue is land in FDR Park known as the Meadows Area, which was acquired by the City for use as a public golf course. Complaint ¶24; R.R. 45. A 1925 City ordinance dedicated FDR Park as public parkland. Complaint ¶25; R.R. 45.

The City has undertaken a multi-year, comprehensive renovation of FDR Park. City Brief at 3.[2] The project will divide FDR Park into two zones: the Urban Edge, which will include athletic fields connected by trails, and the Ecological Core, which will consist of lakes, wetlands, and forests. *Id*. at 8. Construction began in 2020, and some phases of the project have been completed. Complaint ¶45; R.R. 51-52. For example, the City has installed a playground with the world's longest swing set. *Id*.

Neighbors are residents who live near FDR Park and oppose the City's plan to dig up the Meadows Area, plow over it, and install 40 acres of artificial turf for 16 athletic fields, basketball courts, and two concrete parking lots. Complaint ¶38; R.R. 49. They allege that the plan will raise the level of the Meadows Area by eight feet, under which large water tanks will be installed to capture the stormwater runoff created by the artificial turf. Complaint ¶36; R.R. 48. Further, the plan will destroy the wetlands and "completely change[] the purpose of the parkland." Complaint ¶39; R.R. 49.

---

[2] The City argues extensive facts in its brief, which cannot be considered. It argues, for example, that many state and city agencies have approved its project for FDR Park. City Brief at 12-13. These approvals are *de hors* the record. The same is true for the City's repeated claim that the Meadows Area lies below sea level and requires water management.

On March 25, 2024, Neighbors filed a complaint for a declaratory judgment and permanent injunction. They also filed a motion for a preliminary injunction to enjoin, immediately, the City from taking "any further steps, including cutting down trees, plowing over meadowlands, placing 40 acres of artificial turf, [and] creating underground massive storage tanks[.]" R.R. 67.

The complaint alleges that for nearly 90 years FDR Park has been used as a public parkland with an ecosystem of meadows, wetlands, and forests that was designed by the Olmstead landscape architecture firm. Complaint ¶¶38, 39; R.R. 49. By replacing the natural Meadows Area with artificial turf for athletic fields and concrete for parking lots, the City's plan will deviate from FDR Park's dedicated purpose. Complaint ¶39; R.R. 49.

The complaint asserts that the City violated the statute known as the Donated or Dedicated Property Act (Donated Property Act)[3] and the statute known as the Inalienable Property Act[4] because it did not obtain the approval of the Orphans' Court for the alterations it proposes to make to FDR Park. Complaint ¶¶53, 57, 58, 60; R.R. 56-58. Further, City Council did not approve the alterations, as required by the City's Charter. Complaint ¶58; R.R. 57. The complaint also asserts that the project will degrade public historic and natural resources in violation of article I, section 27 of the Pennsylvania Constitution, known as the Environmental Rights Amendment,[5] and the public trust doctrine. Complaint ¶55; R.R. 55. As this Court has explained,

> [u]nder the common law public trust doctrine, when land has been dedicated and accepted for public use, a political subdivision is estopped from interfering with or revoking the

---

[3] Act of December 15, 1959, P.L. 1772, *as amended*, 53 P.S. §§3381-3386.

[4] 20 Pa. C.S. §§8301-8306.

[5] PA. CONST. art. I, §27.

4

grant at least so long as the land continues to be used, in good faith, for the purpose for which it was originally dedicated.

*In re Estate of Ryerss*, 987 A.2d 1231, 1236 n.8 (Pa. Cmwlth. 2009). Further,

the public trust doctrine required that property dedicated to public use requires the municipality, as trustee, to hold the property for the community. It may not convey it to a private party.

*In re Township of Jackson*, 280 A.3d 1074, 1086 (Pa. Cmwlth. 2022).

Count I of the complaint requests a declaratory judgment that in pursuing the above-listed revisions to FDR Park, the City has violated the common law public trust doctrine (Public Trust Doctrine), the Donated Property Act, the Inalienable Property Act, and the Environmental Rights Amendment. Count II of the complaint seeks a permanent injunction against the sale, transfer, or any "radical changes to the park" without Orphans' Court approval. Complaint ¶60; R.R. 57. With the complaint, Neighbors filed a motion for a preliminary injunction.

The Orphans' Court scheduled a hearing on their motion for May 2, 2024.

On April 25, 2024, the Conservancy filed preliminary objections to Neighbors' complaint, asserting that the claims against the Conservancy should be dismissed because it is a private actor and does not own or control FDR Park. Thus, the Conservancy should not have been named as a defendant.

On April 26, 2024, the City filed its preliminary objections to Neighbors' complaint, asserting, *inter alia*, that (1) the Orphans' Court lacks jurisdiction over claims brought under the Environmental Rights Amendment; (2) the complaint failed to state a claim under the Donated Property Act or the Public Trust Doctrine because FDR Park remains a public park; (3) the complaint did not allege a sale, lease, or other alienation of FDR Park property as necessary to trigger

the Inalienable Property Act; (4) only a political subdivision trustee, not a private citizen, can enforce the Donated Property Act; and (5) the doctrine of laches bars Neighbors' complaint. The City requested dismissal of the entire complaint.

On April 26, 2024, Neighbors renewed their request for an immediate injunction by filing a "Petition to Stay All Activity in FDR Park Until the Injunctive and Declaratory Relief Actions are Resolved" by the Orphans' Court. Therein, Neighbors alleged that the Philadelphia Zoning Board of Adjustment (Zoning Board) had granted a special exception to the City to remove 48 heritage trees from FDR Park. Neighbors appealed the special exception to the Trial Division of the Court of Common Pleas of Philadelphia County (Trial Division), and the appeal was assigned to Judge Sierra Thomas Street. The parties to that proceeding agreed to stay the Zoning Board's order until the May 2, 2024, hearing before the Orphans' Court. Neighbors' petition requested the Orphans' Court to extend the stay of the Zoning Board's decision until their complaint was resolved by the Orphans' Court.

At the May 2, 2024, hearing, the Orphans' Court considered only the issue of its subject matter jurisdiction. Following argument by the parties, the Orphans' Court concluded that it lacked jurisdiction and dismissed the complaint in its entirety. It reasoned that the Donated Property Act is triggered only where the political subdivision seeks to sell or completely change the use to which the property has been dedicated. Here, Neighbors conceded that FDR Park will remain a public park. The Inalienable Property Act did not apply because the parties agreed the City had no intent to sell, mortgage, lease, exchange, or otherwise alienate FDR Park. Finally, neither statute nor the Pennsylvania Constitution vested the Orphans' Court with jurisdiction to hear claims arising under the Environmental Rights Amendment or the Public Trust Doctrine. Although the Orphans' Court stated that it lacked

6

jurisdiction over this matter, its rationale for dismissing claims brought under the Donated Property Act and the Inalienable Property Act was that Neighbors' complaint did not state a claim.

At the May 2, 2024, hearing, the Orphans' Court denied Neighbors' request to enjoin the destruction of 48 heritage trees in FDR Park. The Orphans' Court suggested that Neighbors "go back to Judge Street, since the matter is before her and make that request [to] her." Hearing Transcript, 5/2/2024, at 63; R.R. 249.

On May 3, 2024, Neighbors appealed the Orphans' Court order of May 2, 2024. On May 8, 2024, the Orphans' Court entered a decree denying Neighbors' petition to stay all City activity on FDR Park. Also on May 8, 2024, the Orphans' Court entered a decree dismissing the outstanding preliminary objections as moot.

On May 7, 2024, Neighbors filed an application with this Court for "an immediate hearing" and "an emergency [s]tay" of the Orphans' Court order of May 2, 2024. Neighbors Motion for Emergency Stay ¶5. Their application alleged that "48 heritage trees" had already been cut down and that further work at FDR Park would cause immediate and "irreparable harm." *Id*., ¶3. On May 7, 2024, this Court issued a temporary stay and injunction to prevent further work on FDR Park until the Court could receive expedited responses to Neighbors' application for relief. Thereafter, on May 8, 2024, this Court vacated its temporary stay and, on May 13, 2024, denied Neighbors' application, which was treated as an application for an injunction pending appeal.[6]

---

[6] As this Court explained, "[i]t would make no sense for this Court to stay enforcement of an order dismissing for lack of jurisdiction; that stay would have no practical effect since the lower court granted no relief." *In re: Preservation of FDR Park* (Pa. Cmwlth., No. 545 C.D. 2024, filed May 13, 2024), slip op. at 8-9. *See also* PA.R.A.P. 1732(b) (relating to the requirements for an application for stay or injunction pending appeal).

Before this Court for appellate review are the Orphans' Court orders of May 2, 2024, and May 8, 2024, which dismissed Neighbors' complaint, denied Neighbors' request to stay all City activity on FDR Park, and dismissed outstanding preliminary objections as moot.

## Issues on Appeal

On appeal,[7] Neighbors raise four issues. First, Neighbors contend that the Orphans' Court erred in dismissing their complaint for lack of jurisdiction because the Orphans' Court is vested with unlimited, original jurisdiction. Second, Neighbors contend that an evidentiary hearing would demonstrate that they timely filed their complaint; thus, it is not barred by the doctrine of laches. Third, Neighbors contend that the Orphans' Court erred in holding that the radical alteration of FDR Park, from a public parkland of forests, heritage trees, meadows, and wetlands used for hiking, picnicking and birdwatching, into athletic fields that will be used for tournament sports play, not by the general public, did not trigger a need for Orphans' Court review for compliance with the Public Trust Doctrine, the Donated Property Act, the Inalienable Property Act, and the Environmental Rights Amendment. Fourth, Neighbors contend that the Orphans' Court erred, as did this Court, by not conducting an evidentiary hearing before denying their request to stay,

---

[7] In reviewing an order sustaining preliminary objections, this Court's standard of review is *de novo*, and our scope of review is plenary. *In re Wilkinsburg Taxpayers and Residents Interest in Green Street Park Sale to a Private Developer and Other Park-Systems Conditions*, 200 A.3d 634, 640 n.12 (Pa. Cmwlth. 2018). In ruling on preliminary objections, the Court must accept as true all well-pleaded material allegations in the complaint, as well as all inferences reasonably deduced therefrom. *Id*. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id*. Preliminary objections will be sustained when it appears with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id*.

8

or enjoin, all City activity on FDR Park until a judgment is rendered on their complaint.

We address these issues *ad seriatim*.

## Analysis

## I. Jurisdiction of the Orphans' Court

In their first issue, Neighbors argue that the Orphans' Court erred in holding that it lacked jurisdiction over the claims raised in their complaint. Neighbors contend that the City's project will cause a "total destruction" of the Meadows Area of FDR Park by removing existing trees, rivers, streams, and natural turf and replacing them with artificial turf and concrete for athletic fields and parking lots. Neighbors Brief at 39. They explain that the Donated Property Act vests exclusive jurisdiction in the Orphans' Court to determine whether the City's plans for FDR Park can be allowed to proceed. *See* Section 4 of the Donated Property Act, 53 P.S. §3384 (Orphans' Court determines whether "the original use of the particular property held in trust as a public facility is no longer practicable or possible and has ceased to serve the public interest"). Further, Section 712 of the Probate, Estates and Fiduciaries Code (Probate Code), 20 Pa. C.S. §712, confers jurisdiction on the Orphans' Court to hear matters arising under the Environmental Rights Amendment. Neighbors contend that the Orphans' Court erred in otherwise holding.

The City acknowledges that the Orphans' Court has jurisdiction to adjudicate claims under the Donated Property Act, the Inalienable Property Act, and the Environmental Rights Amendment.[8]  However, it contends that Neighbors'

---

[8] However, in its preliminary objections, the City stated that the Orphans' Court is "a court of limited jurisdiction and exercises only those powers granted to it by statute."  City Preliminary Objections ¶59; R.R. 128.  The City contended that Neighbors had not "alleged a basis for [the Orphans'] Court to obtain jurisdiction" over matters arising under the Environmental Rights Amendment. *Id*., ¶62; R.R. 129.

complaint did not state a legally cognizable claim under these statutes, the Public Trust Doctrine, or the Environmental Rights Amendment;[9] this was the rationale used by the Orphans' Court to dismiss Neighbors' complaint. The City argues, further, that the dismissal of Neighbors' complaint can be affirmed on other grounds, namely, the doctrine of laches. The City's plans for FDR Park have been known to the public since at least 2019, and there will be prejudice to the City if it is not allowed to proceed forthwith.

Subject matter jurisdiction "inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs." *Empire Roofing & More, LLC v. Department of Labor & Industry, State Workers' Insurance Fund*, 312 A.3d 400, 405 (Pa. Cmwlth. 2024) (quoting *Domus, Inc. v. Signature Building Systems of Pennsylvania, LLC*, 252 A.3d 628, 636 (Pa. 2021)). The pertinent consideration "is whether the court could enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case." *Domus*, 252 A.3d at 636.

The Judicial Code provides that Pennsylvania's courts of common pleas have unlimited original jurisdiction "of all actions and proceedings." 42 Pa. C.S. §931(a).[10] The legislature has established three divisions within the Court of Common Pleas of Philadelphia County. The Judicial Code further states as follows:

---

[9] The Conservancy joined the City's Brief. It also filed a brief in support of its position that it is not a proper defendant for claims brought under the Donated Property Act, the Inalienable Property Act, or the Environmental Rights Amendment because it is a private actor. The Orphans' Court did not address these arguments because it dismissed Neighbors' complaint in its entirety.

[10] It states:

> **(a) General rule.**--Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, *the*

10

(a) Philadelphia County.--The Court of Common Pleas of Philadelphia County shall have the following divisions:

(1) Trial division.

(2) Orphans' court division.

(3) Family court division.

42 Pa. C.S. §951(a). These divisions were established "essentially for the purposes of administrative convenience." *In re Estate of Hall*, 535 A.2d 47, 59 (Pa. 1987). The divisions are "responsible for the transaction of specified classes of the business of the court." 42 Pa. C.S. §952. Even so, each division is vested with the full jurisdiction of the whole court. *Id*. ("In a court of common pleas having two or more divisions each division of the court is vested with the full jurisdiction of the whole court[.]").

The Environmental Rights Amendment established "a public trust, pursuant to which the natural resources are the corpus of the trust, the Commonwealth[] is the trustee, and the people are the named beneficiaries." *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911, 931-32 (Pa. 2017) (footnote omitted). These "trustee obligations are not vested exclusively in any single branch of Pennsylvania's government, and instead all agencies and entities of the Commonwealth government, both statewide and local, have a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality." *Id*. at 931 n.23.

To reach its conclusion that it lacked jurisdiction over Neighbors' complaint, the Orphans' Court reasoned that it had mandatory jurisdiction only "over

---

*courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings*, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

42 Pa. C.S. §931(a) (emphasis added).

testamentary and [i]nter vivos trusts and fiduciaries, but not trusts created by operation of law," such as the public trust created by the Environmental Rights Amendment. Orphans' Court PA.R.A.P. 1925(a) Op. at 7. In support, the Orphans' Court cited Section 711 of the Probate Code, which states, in pertinent part, as follows:

> Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) and section 713 (relating to special provisions for Philadelphia County), the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:
>
> > (1) Decedents' estates []
> >
> > (2) Testamentary trusts []
> >
> > (3) Inter vivos trusts []
> >
> > (4) Minors' estates []
> >
> > (5) Custodianships for minors' property []
> >
> > (6) Guardian of persons of minors []
> >
> > (7) Adoptions []
> >
> > (8) Custody of minors []
> >
> > (9) Birth records []
> >
> > (10) Incapacitated persons' estates []
> >
> > (11) Absentees' and presumed decedents' estates []
> >
> > (12) Fiduciaries []
> >
> > (13) Specific performance of contracts []
> >
> > (14) Legacies, annuities and charges []
> >
> > (15) Construction of administrative power []
> >
> > (16) Disposition of title to real estate to render it freely alienable []
> >
> > (17) Title to personal property []
> >
> > (18) Appeals and proceedings from registers []
> >
> > (19) Marriage licenses []

12

(20) Inheritance and estate taxes []

(21) Nonprofit corporations []

(22) Agents [and]

(23) Digital assets []

20 Pa. C.S. §711 (emphasis added).

Section 711, however, is not exhaustive of the jurisdiction of the orphans' court division of the court of common pleas. Section 712(3) of the Probate Code states as follows:

> The jurisdiction of the court of common pleas over the following may be exercised through either its orphans' court division or other appropriate division:
>
> . . . .
>
> **(3) Other matters.**--The disposition of any case where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section.

20 Pa. C.S. §712(3). The Pennsylvania Supreme Court has construed Section 712(3) to mean that orphans' court divisions are vested with "broad residual and discretionary jurisdiction over all matters that are subject to resolution by courts of common pleas generally." *In re Estate of Hall*, 535 A.2d at 59. This includes claims arising under the Public Trust Doctrine. *See Borough of Downingtown v. Friends of Kardon Park*, 55 A.3d 163 (Pa. Cmwlth. 2012) (the orphans' court reviewed a borough's proposed sale of land purchased with funds provided by grant from the Commonwealth).

The Judicial Code vests Pennsylvania's courts of common pleas with unlimited original jurisdiction "of all actions and proceedings." 42 Pa. C.S. §931(a). "All actions" includes those brought under the Donated Property Act, the Inalienable Property Act, the Public Trust Doctrine, and the Environmental Rights Amendment,

13

irrespective of the existence of court divisions.[11]  The Orphans' Court erred in holding that its jurisdiction was limited to the matters enumerated in Section 711 of the Probate Code.  Accordingly, we reverse the Orphans' Court's dismissal of Neighbors' complaint for the stated reason that it lacked subject matter jurisdiction.

## II.    Laches

In their second issue, Neighbors assert that the City has improperly invoked the doctrine of laches.  Because the City failed to seek approval of the Orphans' Court to effect its radical change to the Meadows Area of FDR Park, the City lacks clean hands and cannot invoke the equitable defense of laches.  The City "should have sought approval of the Orphans' Court" before "destroying and ending FDR Park as it was."  Neighbors Brief at 47, 49.

The City responds that in 2018, the FDR Park project was announced to the public, and in 2019, the first Master Plan was published.  The Master Plan contained a detailed description of all the changes being made to the Park, including the installation of new athletic fields on the former golf course.  The complaint alleges that construction on the FDR Park Project began in 2022, and portions completed before Neighbors filed their complaint.  Neighbors' delay of many years has triggered the doctrine of laches.  Further, the doctrine of laches turns not on

---

[11] The Orphans' Court could have transferred the complaint to the Trial Division.  Section 5103(c) of the Judicial Code states:

> **Interdivisional transfers.**--If an appeal or other matter is taken to, brought in, or transferred to a division of a court to which such matter is not allocated by law, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper division of the court, where the appeal or other matter shall be treated as if originally filed in the transferee division on the date first filed in a court or magisterial district.

42 Pa. C.S. §5103(c).

14

actual knowledge but on what the party "*reasonably should have known*." City Brief at 19 (emphasis in original).

Neighbors rejoin that there has been no evidentiary hearing, which is required in order to decide the City's laches argument. They allege that they only learned in early 2024 that the City would cut down 48 heritage trees and level many acres of land.

Laches is an equitable doctrine that requires not only the passing of time but also a showing of prejudice resulting from the delay. *Appeal of Churchill Area School District*, 374 A.2d 1000, 1002 n.1 (Pa. Cmwlth. 1977). The Pennsylvania Supreme Court has explained:

> The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice. * * * *The question of laches is factual and to be determined by an examination of the circumstances*.

*Holiday Lounge, Inc. v. Shaler Enterprises Corporation*, 272 A.2d 175, 177 (Pa. 1971) (citation omitted) (emphasis added). Further, "laches should never be declared unless the *existence thereof is clear on the face of the record*." *In re Marushak's Estate*, 413 A.2d 649, 651 (Pa. 1980) (emphasis added). Laches is an affirmative defense that should ordinarily be raised in a responsive pleading under "New Matter." Pa.R.Civ.P. 1030(a).[12] *See also Sernovitz v. Dershaw*, 127 A.3d 783, 791 (Pa. 2015). Nevertheless, "laches may be raised and determined by preliminary objection if laches clearly appears in the complaint." *Holiday Lounge*, 272 A.2d at 177.

---

[12] It states, in pertinent part, that "all affirmative defenses including but not limited to . . . laches . . . shall be pleaded in a responsive pleading under the heading 'New Matter.'" Pa.R.Civ.P. 1030(a).

Here, the Orphans' Court did not consider the City's preliminary objection based on the doctrine of laches, concluding it was mooted by its dismissal of Neighbors' complaint on jurisdictional grounds. Because we reverse the Orphans' Court's dismissal of Neighbors' complaint, the City's preliminary objection on the basis of laches is not moot. Accordingly, a remand on this preliminary objection is necessary.

### III.    Donated Property Act/Inalienable Property Act

In their third issue, Neighbors contend that the Orphans' Court erred in holding that their complaint did not state a claim under the Donated Property Act or the Inalienable Property Act. The complaint alleged that the City's plan will "radically change[] and destroy[]" the Meadows Area of FDR Park. Complaint ¶46; R.R. 52. As such, the Donated Property Act and the Inalienable Property Act each required the City to obtain the prior approval of the Orphans' Court. The City responds that such approval is required only where public property is sold, leased, or diverted from its original public purpose. The complaint does not allege that FDR Park is being sold or leased or that it will cease to function in accordance with its original purpose. The City asserts that Neighbors have failed to state a legally valid claim under the Donated Property Act and the Inalienable Property Act.

The Donated Property Act applies to all real estate held in trust by the municipality for a public purpose. Sections 1 and 2 of the Donated Property Act, 53 P.S. §§3381-82. Section 3 of the Donated Property Act imposes a duty on municipalities to use the property "*for the purpose . . . for which* [*it was*] *originally dedicated or donated*[.]" 53 P.S. §3383 (emphasis added). Residents of a municipality have standing to present "a private right of action to enforce the mandatory duty set forth in Section 3 of the Donated [] Property Act." *White v.*

16

*Township of Upper St. Clair*, 799 A.2d 188, 200 (Pa. Cmwlth. 2002) (*White*). Our Supreme Court has held that the Donated Property Act has incorporated "salient common-law [trust] principles" and, further, has established the procedures for vindicating these principles with respect to donated or dedicated property. *In re Erie Golf Course*, 992 A.2d 75, 86 (Pa. 2010). Specifically, a municipality may petition the orphans' court for review and approval of a change in the use of the dedicated property. Section 4 of the Donated Property Act, 53 P.S. §3384. Even where the municipality changes the "original trust purpose" to a "*different public purpose*," it must have court approval under Section 4. *White*, 799 A.2d at 200 (emphasis added). Otherwise, the municipality "runs the risk of being the target of an equity action brought to enforce a dedication[.]" *Id*.

Neighbors' complaint alleges that FDR Park is "an actively used public park . . . and continues to operate and be used as an active public park." Complaint ¶20; R.R. 43.[13] The complaint also states that the City is putting in a playground "that has the longest swing set in the world[.]" Complaint ¶45; R.R. 51-52. The City asserts that these allegations undermine Neighbors' legal theory that the project will deviate from the public purpose "for which [it was] originally donated or dedicated[.]" Section 3 of the Donated Property Act, 53 P.S. §3383.

To support their argument that "there cannot be radical changes of the use of the land" without Orphans' Court approval, Neighbors rely upon *White*, 799 A.2d 188. Neighbors Brief at 65. *White* concerned a 200-acre park restricted by its deed to recreation, conservation, and historic purposes. In addition, the township's comprehensive plan designated the park for public recreation, which it described as

---

[13] The City construes this allegation as a concession by Neighbors that the renovations to FDR Park will not affect its use as a public park. The allegation refers to the continued viability of FDR Park as it exists today, not its post-renovation state.

"natural open space." *White*, 799 A.2d at 190. When the township leased a .428-acre parcel of the park for a private, commercial venture consisting of a communications tower that necessitated construction of a 20-foot wide, one quarter-mile long access road through the park, residents filed suit under the Donated Property Act. The residents contended that the park's use was limited by the restrictions set forth in the deed. This Court held that the township residents had standing to enforce the Donated Property Act and remanded the matter to the trial court for a hearing on the merits of their complaint.

In *White*, the township deviated from the specific purpose for which the property had been dedicated, *i.e.*, recreation and conservation. Instead, the township entered into a 25-year lease that could be extended to 75 years for a private, commercial venture. The fact that the commercial venture left the public park largely intact was irrelevant. The deviation from the dedicated purpose for even a part of the park triggered the Donated Property Act.[14]

Neighbors argue that such a deviation will occur here. Because the athletic fields will be gated and used for sports tournaments, the City's playing fields in the Meadows Area will no longer be available for public use. At the same time, the Meadows Area will be destroyed and replaced with artificial turf.[15] These

---

[14] *See also In re Erie Golf Course*, 992 A.2d 75 (sale of a municipal golf course and park to developer); *In re Borough of Downingtown*, 161 A.3d 844 (Pa. 2017) (sale of park to private developers); *In re Estate of Ryerss*, 987 A.2d 1231 (lease of park to private hospital).

[15] Neighbors characterize the changes to the Meadows Area as "destruction." Neighbors Brief at 57. In *Chasan v. Platt*, 244 A.3d 73, 80 (Pa. Cmwlth. 2020), we explained that legal conclusions, unwarranted factual inferences, argumentative allegations, or expressions of opinion need not be accepted when deciding preliminary objections in the nature of a demurrer.

changes constitute a deviation from the purpose for which FDR Park was dedicated, *i.e.*, a public parkland.[16]

The complaint alleges that by a 1925 City ordinance, FDR Park was dedicated to the purpose of "public parkland" to be used "for a public golf course [and] public playfields[.]" Complaint ¶25; R.R. 45. The Orphans' Court held that Neighbors did not have a claim under the Donated Property Act because the changes to FDR Park "would impact the look of the park" but not its use as a park open to the public. Trial Court PA.R.A.P. 1925(a) Op. at 10. Neighbors contend that "parkland" requires a natural environment and is not broad enough in scope to include artificial turf. They view the loss of the Meadows Area as a natural landscape and its replacement with artificial turf and parking lots to deviate from the dedicated purpose of public parkland.[17]

The Inalienable Property Act requires judicial review of a proposed sale, mortgage, lease or exchange of real property where its legal title is inalienable.

---

[16] The Philadelphia Code uses the term "Outdoor Park or Recreation Land," which is defined as:

> (2) *Outdoor Park or Recreation Land* means land (a) that was under the jurisdiction of the former Fairmount Park Commission or former Recreation Department as of June 30, 2009, or is under the jurisdiction of the Department of Parks and Recreation, and (b) used for outdoor public park or outdoor recreation activity. For example, without limitation, "outdoor park or recreation land" includes the following, where each is owned or held by the City for public use or enjoyment: woods; hiking trails; recreation paths; picnic areas; lawns; gardens; baseball, softball and other athletic fields; outdoor fountains and plazas; horseback riding corrals; playgrounds; outdoor tennis courts and outdoor basketball courts.

PHILADELPHIA CODE §15-101(2). FDR Park is part of the City's Fairmount Park system.

[17] A "parkland" is defined as "land with clumps of trees and shrubs in cultivated condition used as or suitable for use as a park." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 901 (11th ed. 2003). Our Supreme Court has stated that a "public park may be defined as a *tract of land kept more or less in its natural state*, or embellished by the planting of additional trees and flowers, and devoted to the purposes of pleasure, recreation and amusement." *Bernstein v. City of Pittsburgh*, 77 A.2d 452, 455 (Pa. 1951) (emphasis added). This Court has used the terms "public park" and "parkland" interchangeably. *See, e.g., In re Estate of Ryerss*, 987 A.2d 1231.

20 Pa. C.S. §8301(3).[18]  Neighbors argue that the City's proposed changes to FDR Park constitute a constructive sale or transfer, which triggered the need for approval by the Orphans' Court under the Inalienable Property Act.  Complaint ¶¶44-46, 56; R.R. 51-52, 56.

In support of its conclusion that it lacked jurisdiction, the Orphans' Court reasoned that Neighbors did not state a claim under the Donated Property Act because they conceded that FDR Park would remain a park.  Neighbors did not state a claim under the Inalienable Property Act because they conceded that the City was not selling or leasing FDR Park.[19]  There has been no evidentiary hearing in this matter.  A demurrer must be based solely on the allegations of the complaint, not statements made at oral argument.  In any case, we decline to treat the Orphans' Court rationale as a direct ruling on the City's demurrer.  Its decree dismissed the City's demurrer on grounds of mootness.  Simply, appellate review of any of the demurrers is premature until the Orphans' Court rules in the first instance.

Accordingly, we will remand for further proceedings on the City's demurrer to Neighbors' complaint that the City's plans for FDR Park violate the Donated Property Act, the Inalienable Property Act, and the Environmental Rights Amendment.  In conducting this review, the Orphans' Court should be mindful of our Supreme Court's instruction that the Environmental Rights Amendment affects

---

[18] It states, in relevant part, as follows:

> The court of common pleas, operating through its appropriate division, may authorize the sale, mortgage, lease or exchange of real property or grant declaratory relief with respect to real property:
>
> . . . .
>
> (3) Where the legal title is otherwise inalienable.

20 Pa. C.S. §8301(3).

[19] Indeed, the complaint does not contain allegations that title to the parcels that make up FDR Park are inalienable.

the work of all three branches of state government. *Pennsylvania Environmental Defense Foundation*, 161 A.3d at 931 n.23. Stated otherwise, the Donated Property Act must be read through the lens of the Environmental Rights Amendment. Further, the Donated Property Act established the procedures for vindicating public trust principles, including those arising from the Environmental Rights Amendment. *In re Erie Golf Course*, 992 A.2d at 86. Finally, the fact that FDR Park will serve some kind of public purpose does not exempt the new public purpose from review under the Donated Property Act. *White*, 799 A.2d at 200.

## IV. Need for Evidentiary Hearing

Neighbors argue that under the Environmental Rights Amendment, when read in conjunction with the Public Trust Doctrine and the Donated Property Act, the City has an obligation to preserve the Meadows Area of FDR Park as a natural parkland. This area consists of approximately 75 acres of meadows and woodlands providing food and shelter for a variety of wildlife. Neighbors argue that the City must prove to the Orphans' Court that this *existing* use of the Meadows Area is no longer practical before the City can replace it with artificial turf and parking lots. Neighbors Brief at 63-64. Stated otherwise, the City needs to prove to the Orphans' Court that it has properly exercised its responsibility as a trustee of natural resources under the Environmental Rights Amendment and the Public Trust Doctrine. To that end, Neighbors argue that the Orphans' Court should be directed to hold an evidentiary hearing on their complaint and motion for preliminary injunction.

The City responds that Neighbors' complaint has not stated a legally cognizable claim under the Environmental Rights Amendment. As noted, however, the Orphans' Court did not rule on this demurrer of the City or the demurrer of the

21

Conservancy that it is not a proper party. Appellate review is premature. As also noted, the Environmental Rights Amendment cannot be separated from the other legal claims raised in the complaint.

As to Neighbors' request for an immediate hearing on its petition for a preliminary injunction, this matter will also be remanded, along with all the preliminary objections, for disposition by the Orphans' Court.

## Conclusion

The City rushed to terminate this litigation to avoid any evidentiary hearing by advancing a jurisdictional argument that it has now abandoned. It is beyond peradventure that if a court lacks jurisdiction, it may not address a controversy, no matter how compelling. However, the Orphans' Court did have subject matter jurisdiction over the claims raised in Neighbors' complaint, notwithstanding the public trust nature of those claims.

Accordingly, we reverse the Orphans' Court's May 2, 2024, order dismissing Neighbors' complaint for lack of jurisdiction. The order of May 8, 2024, dismissing the City's and the Conservancy's preliminary objections as moot is vacated and those preliminary objections are remanded to the Orphans' Court. The order of May 8, 2024, denying Neighbors' petition to stay all City activity on FDR Park is vacated. The matter is remanded to the Orphans' Court for further proceedings as set forth in this Opinion.

_____

MARY HANNAH LEAVITT, President Judge Emerita

Judges McCullough and Dumas did not participate in the decision in this case.

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Preservation of FDR Park | : | |
| | : | |
| Richard Garella; Harold Hurwitz; | : | |
| Angelo Altadonna; Tom Piccone; | : | |
| David Gibson; Carolina Torres Toledo; | : | |
| Brian Jeans; Avigail Milder; Anisa George; | : | |
| and Denise-Nanette Morinich, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 545 C.D. 2024 |
| | : | |
| City of Philadelphia c/o Philadelphia | : | |
| Law Dept.; Fairmount Park | : | |
| Conservancy, private non-profit corp.; | : | |
| Philadelphia Department of Parks | : | |
| and Recreation, organized under the | : | |
| City of Philadelphia pursuant to Home | : | |
| Rule Charter and Pa. Statutes; Mayor | : | |
| Cherelle Parker, duly elected mayor of | : | |
| the City of Philadelphia Office of the | : | |
| Mayor; and City Council of Philadelphia, | : | |
| duly elected government body of the City | : | |
| of Philadelphia through the Home Rule | : | |
| Charter c/o Philadelphia Law Dept. | : | |

# **O R D E R**

AND NOW this 13th day of August, 2025, it is hereby ORDERED that the Orphans' Court Division of the Court of Common Pleas of Philadelphia County's (Orphans' Court) May 2, 2024, order dismissing the above-docketed complaint for lack of jurisdiction is REVERSED. The order of May 8, 2024, dismissing the preliminary objections of the City of Philadelphia (City), Philadelphia Department of Parks and Recreation, Mayor Cherelle Parker, and City Council of Philadelphia, and of the Fairmount Park Conservancy as moot is VACATED. The order of May 8, 2024, denying Appellants' petition to stay all City activity on Franklin Delano

Roosevelt Park is VACATED.  The matter is remanded to the Orphans' Court for further proceedings consistent with the attached Opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita